No. 32.—JOHN H. HOWARD, plaintiff in error *vs.* LEROY NAPIER, and others, defendants in error.

No. 32.—LEROY NAPIER, and others, plaintiffs in error *vs.* JOHN H. HOWARD, defendant in error.

[1.] Where a testator, by his will bequeaths certain property to trustees, in trust for his son, and his wife, and his four children, then living, and to any child or children which the testator's said son may hereafter have born, for the use of, support

Napier and others *vs.* Howard.

and maintenance of testator's said son and his family; and for the support, education and *settlement* of the said children of testator's son; *held*, that it was the intention of testator to include after-born children of his son, as well as those living at the testator's death. *Held also*, that testator's son, and his wife, were entitled to the use and benefit of two shares of the property bequeathed, for their maintenance and support; and that each of the children of testator's son was entitled to one share of the property as a settlement, on arriving at the age of twenty-one years, or when the females should marry, liable to refund the proportion of their respective shares, in the event there should be after-born children.

[2.] Where a judgment creditor comes into a court of equity, and asks its assistance to have appropriated to the payment of his debt against the husband, property to which the husband may be entitled in right of his wife, under the will of her grandfather, in the hands of trustees appointed by the testator; adequate provision must first be made for the support and maintenance of the wife and children, if any.

[3.] What will be considered *adequate* provision for that purpose, must depend on the circumstances of the case and the condition of the parties; the court ought to be liberal, and may appropriate the whole, or part of the property, for the benefit of the wife and children, as it may deem equitable and just.

In Equity. From Stewart Superior Court. April Term, 1847. Tried before Judge ALEXANDER.

These cases are predicated upon the same record, in which each of the parties filed bills of exceptions to decisions, on points arising in the progress of the trial, affecting their interests.

Thomas Napier, of the city of Macon, made and appended to his last will the following codicil: " Georgia, Bibb County—Whereas I, Thomas Napier, of the city of Macon, in the county and State aforesaid, have, by my last will and testament in writing, hereupon duly executed, and remaining up to this present time unrevoked and unaltered, made certain bequests to and in favour of my son, Thomas T. Napier. Now I, the said Thomas Napier, being desirous of altering my will in respect to the bequests previously therein contained, to and in favour of my said son, Thomas T. Napier, do therefore make this present writing, which I will and direct, to be annexed as a codicil to my said will, and taken as part thereof; and I do hereby revoke all the bequests and provisions in said will, appertaining to and in favour of my said son, Thomas T. Napier, and in relation to so much of my property and estate, real and personal, as is embraced in said bequests and provisions, and as would by the same, if unrevoked, pass to my son, the said Thomas T. I do hereby give, bequeath, and devise, said property and estate, and all and every part thereof, whether real or personal, to my sons Leroy Napier, and Skelton Napier, and my son in law, Nathan C. Munroe, as trustees, and in trust for

my said son Thomas T., his wife, and his children Leroy Wiley Napier, Sarah C. Napier, Manfredonia M. Napier, and Thomas C. Napier, and any child or children of my said son Thomas T. Napier, that may hereafter be born ; the said trustees to be vested with the legal estate, and full control of said property, and receive the rents, issues and profits thereof, and to apply the same to the use of, and for the support and maintenance of, my said son Thomas. T. and his family, and to the support, education, and settlement of the aforementioned children of my said son, Thomas T. Napier ; it being my will and desire that all the property that would have fallen to my said son Thomas T., under the aforementioned revoked bequests and provisions of said last will, should, under the codicil, vest in said trustees ; in trust, and for the uses as aforesaid, for ever.

And I do hereby ratify and confirm my aforementioned last will and testament, in every thing, except where the same is hereby revoked.

In witness whereof, &c."

James L. De Lanney intermarried with the said Sarah C. Napier, one of the daughters of the said Thomas T. Napier, and who was one of the *cestuis que trust* under said codicil.

After the death of said testator Thomas Napier, the trustees named in the codicil received the bequests and devises so given in trust as aforesaid, and, as such trustees, lent to De Lanney divers sums of money, the payment of which was secured by him by mortgages. The first loan, of two thousand dollars, was made the 7th July, 1842, which was secured by mortgage of that date upon several negroes therein named. The second loan made on the 20th day of October, 1843, was $2,000, also secured by mortgage of that date, upon several negroes. These mortgages were given to said trustees, in their character as trustees, for the said loans made by them as such trustees.

It appears that, after the first mortgage, the Bank of Milledgeville, recovered in Stewart Superior Court, a judgment against said De Lanney for about seven thousand dollars, as indorser upon a note, upon which said Howard was a subsequent indorser, and upon which a judgment was recovered also against Howard, in Muscogee Superior Court. The recovery against De Lanney, in favour of the Bank of Milledgeville, was in the fall term of Stewart Superior Court, 1843, upon which judgment De Lanney has paid fifty-three hundred dollars. At the fall term, 1842, of said

Superior Court, the Bank of Darien, and one Samuel McKenzie, obtained each a judgment against De Lanney; the first for the sum of $2,500, principal, and $655, interest; the last for $2,935 12, principal, and $1,043 50, interest, upon which *fi. fas.* were issued, and which were afterwards transferred and assigned to Howard. The first of these judgments remains open for about $2,400, and about $1,500 has been paid upon the last.

The first mortgage is of older date than the above judgments; the last mortgage of younger date. It will be perceived that the last judgment is of older date than the judgment in favour of the Milledgeville Bank. The first mortgage was made a short time before the rendition of the judgments in the cases of the Bank of Darien, and Samuel McKenzie, and while said cases were pending. The mortgages were foreclosed, and executions issued against, and levied upon, the mortgaged property, which was advertised to be sold on the first Tuesday in May, 1845. The trustees filed a bill in equity against Howard, to prevent him from claiming the money to be raised at said sale until said mortgages should be satisfied; and restraining the sheriff, Price, from paying over to Howard any money arising from such sale in satisfaction of his said two judgments, until said mortgages should be satisfied and discharged.

This bill was sanctioned.

The bill of the trustees alleges, that Howard purchased up the two older judgments, and held them up until all the property of De Lanney, not embraced in the mortgages, was exhausted by the younger *fi. fa.* of the Bank of Milledgeville, and was then proceeding to claim the money raised under the mortgages, by virtue of the older judgments aforesaid, and that the unencumbered property, so exhausted, was sufficient to have satisfied the said older judgments; that if Howard is permitted to proceed with said older judgments, the younger mortgage of the trustees will be entirely defeated.

Howard filed a cross bill, attacking said mortgages, on the ground of fraud in their execution, referring to the pendency of the suits when said mortgages were given; and further alleging, that the money loaned to De Lanney, by said trustees, was in execution of the provisions of the codicil aforesaid, in favour of the children (particularly Sarah C.) of said Thomas T. Napier, and but for her marriage with said De Lanney, the loan to him would never have

taken place; that the same was intended as a settlement, or a use under said will; and that said money would not have been recalled if said De Lanney had not been so much pressed by other debts; that the said money was, and is, the money of said De Lanney, and that the mortgages, to secure the payment of it to said trustees, are null and void, at least as to creditors; or that De Lanney is still entitled, in right of his wife under said codicil, to as much and more money or other property, if said pretended loan, or advances, were not a part of his distributive share; that he will not require the payment or delivery of the same share to him, lest the same be taken for the satisfaction of his debts, particularly the judgments beforementioned; and that said trustees withhold it willingly on the same account; and that the value of said distributive share was from five to ten thousand dollars. That if the mortgages are suffered to claim the money, raised by sale of the mortgaged property, a sufficiency of other property would not be left in possession of De Lanney to satisfy the judgments of Howard; and that De Lanney did not, at the time of executing the said mortgages, own property enough to pay the debts on which said several judgments were founded, the same being then in existence, and to pay his other debts then in being, inclusive of that embraced in the mortgages. This cross bill was filed against the trustees, and De Lanney and wife, and Thomas T. Napier, all of whom answered the same, denying the allegations of fraud and the other equities therein alleged.

At the April Term, 1847, of Stewart Superior Court, a motion was made, on the part of the trustees and others, to dissolve the injunction granted with the cross bill, the decision of which was, by consent, to be made by Judge Alexander, at his chambers, in Columbus; and accordingly, in May, the said motion was argued, and the judge below dissolved the said injunction, so as to permit said trustees to proceed with the older mortgage *fi. fa.*, and that said injunction should still operate on the younger mortgage *fi. fia.* until the further order of the Court and thereupon the said Howard excepted.

And the counsel for the trustees also excepted.

Howard assigned for error, the dissolution of the injunction, so as to permit the trustees to proceed with the older mortgage.

The trustees assigned for error, that the Court ordered and decided, that the injunction should be dissolved in part, so as to allow the older mortgage *fi. fa.* to proceed, whilst the younger was

ordered to be still restrained; when the Court should have ordered and decreed, that the whole injunction should have been dissolved, so that both mortgage *fi. fas.* should proceed, the equity of the bill being entirely sworn off by the trustees and the other defendants therein.

Jones, Benning & Jones, for Howard, plaintiff in error, in the first case.

Thomas Napier, deceased, by his will, in effect bequeathed one-sixth of his estate, valued at $260,000, to Leroy Napier, Skelton Napier, and Nathan C. Munroe, in trust for Thomas T. Napier and his wife, and his children Leroy Wiley Napier, Sarah C. Napier, Manfredonia M. Napier, and Thomas C. Napier; that is to say, in trust, to apply the same in such a manner that it might be for the use, support, and maintenance of the said Thomas T. and his family, and to the support, education and settlement of his said children.

Even a bequest of "rents and profits," to be applied to a settlement, would carry with it a power and a duty, to sell the *corpus* out of which they issued, if necessary to effect the object. 2 *Jarman on Wills*, 534, 535, 536, 537; 2 *Story Eq. sec.* 1064.

Therefore, each child was entitled to a support and education, and a *settlement*, out of this bequest.

This settlement, in the case of one of the female children, could be called for on marriage. *Butler* vs. *Lowe*, 10 *Sim.* 318; *Storrs* vs. *Benbow*, 2 *Myl. & K.* 46; *Scott* vs. *Earl of Scarborough*, 1 *Beav.* 154. A proper settlement would be, one equal share out of five into which the whole trust fund, say $41,400, should be divided, amounting to, say $8,300 of principal, and about $3,072 of interest. This amount being amassed from those portions of the annual interest which would remain at the end of each year, after paying the year's expenses for support and education, estimating these expenses at $300. So that Mrs. De Lanney's share could not be less than 11 or 12 thousand dollars.

After Thomas Napier's estate was distributed, and the trustees aforesaid had received their part aforesaid, say $41,400, they delivered $2,000 to James L. De Lanney, who had then recently married Sarah C. Napier, not, as they allege, in part of what he was entitled to under said will, because, as they also alleged, he was not entitled to any thing, except a portion of the " rents and

profits" of the trust fund, but by way of loan, and to be secured by mortgage ; although they do not pretend that the money would ever have been recalled, unless the interest of " the trust fund should have required it." Some *two* or *three* months afterwards a mortgage was accordingly executed.

If this is a partial " settlement," it is the only one that has been made.

It is also true that the mortgage was executed during the pendency of the suits which resulted in Howard's judgments, and that too, not long before the judgments.

James L. De Lanney's property, exclusive of that thus mortgaged, was by no means sufficient to satisfy Howard's *fi. fas.*, to say nothing of the *fi. fa.* in favour of the Milledgeville Bank, which he is bound for. Hence it is the object of his bill to compel this mortgage to give place to the *fi. fas.* And therefore he says—

1. That the said $2,000 delivered to De Lanney by the trustees and mortgagees, as aforesaid, really belonged to him. *Jarman, supra.* The intervention of trustees, to " apply" the bequest, making no difference. *Lumb* vs. *Milnes,* 5 *Ves.* 516 ; *Stanton* vs. *Hall,* 2 *Rus. & Myl.* 175; *Tyler* vs. *Luke, ib* 183 ; *Kensington* vs. *Dolland,* 2 *Myl. & K.* 184; 2 *Story Eq. sec.* 1061.

Or if it did not, that another and much larger sum, viz., one-fifth of the trust fund aforesaid, which did belong to him, was, and still is, in their hands, and that it ought to be set off against the mortgage debt. 2 *Story Eq., secs.* 1435, 1436, 1436 *a,* 1437 *a.*

2. That as the mortgagees have two funds to which they may resort, one the mortgaged property, the other De Lanney's share of the money held in trust by them, as aforesaid, they ought to be made to resort to the latter, for the reason that Howard's *fi. fas.* cannot reach it at all, or, if at all, only in equity. 1 *Story Eq. secs.* 633, 634.

3. That, under all these circumstances, the " intent" is clear, " to defraud" creditors by the mortgage.

4. And the mortgagees, if allowed to collect the mortgage out of the mortgaged property, will be forced to pay it over immediately to Howard's *fi. fas.*, as a part of De Lanney's interest under said will. 1 *Story Eq. sec.* 664.

Same counsel for Howard, defendant in error, in the second case.

In this case an injunction had been granted against two mortgage

*fi. fas.*, in favour of two general *fi. fas.* The general *fi. fas.*, were founded on judgments of the same date, but the mortgages were, the one older and the other younger, than those judgments. On the motion to dissolve, the judge decided that, the injunction, as against the older mortgage *fi. fa.*, should be dissolved, and, as against the younger, retained. Each side excepted to so much of this decision as made against itself.

The defendant in error says, that the injunction was properly retained against the younger mortgage.

1st. For all the reasons urged by him before this Court, *against* the decision dissolving that upon the older mortgage *fi. fa.*, and which reasons in brief are now in the possession of the Court.

2d. Because the *fi. fas.* are older than this mortgage, and there is no special equity in its favour.

3d. Because, if there is any such equity stated in the bill of the plaintiffs in error, against the defendant, and which bill is referred to and exhibited in defendant's bill, it could not be noticed upon the motion to dissolve on the coming in of the answers; such equity not having been put in issue by them.

4th. Because, if the facts stated in that bill, could be noticed on such motion, there is no equity in them in favour of such younger mortgage against said general *fi. fas.* The object of that bill was to get the benefit of the rule as to marshalling securities. Now, admitting the bill to be true, for the sake of the argument, Howard could not be compelled to marshal, for to do so would be to injure him. 1 *Story Eq. sec.* 633.

2. And would injure *another party* having an equal equity, viz., the Milledgeville Bank.

3. But, more especially, because the time had elapsed when it could be said there were *two funds* within reach of Howard, and only one within reach of the Napiers.

E. R. BROWN for Napier in both cases.

1. The Court below should have dissolved the injunction totally, the equity in the bill (if there be any,) being entirely sworn off by the defendant's answer.

2. The object of the bill is to have the consideration, or the money lent to De Lanney by the trustees, for which the two mortgages were given, decreed to be allowed by them as a portion *pro tanto* of De Lanney, in right of his wife under the codicil, and thus *substantially* to subject an unascertained and unknown interest to the sat-

isfaction of the claims of creditors. The law *(et æquitas sequitur legem,)* requires that there must be some certainty for the rights of creditors to act upon. The maxim, "*id certum est quod certum reddi potest,*" does not apply; for here there are no data given in this case whereby certainty in the remotest degree can be reached, or in any manner ascertained.

3. If the complainant below is entitled to any relief, he certainly is not entitled to it in the way proposed; for only the *interest* of the debtor can be taken, and not the *entire* part of any *specific portion,* as is sought to be done by this bill: the interest of the portion belonging to the tenants in common, or joint tenants, must be respected. 1 *Salk.* 392; 15 *J. R.* 179; *Cowp.* 445; 1 *East.* 367; 12 *J. R.* 282; 15 *Mass. R.* 82; *Phillips* vs. *Cook,* 24 *Wend.* 389; *Waddell* vs. *Cook,* 2 *Hill. N. Y.* 47; *see also Leonard* vs. *Scarborough & Wife et al.,* 2 *Kelly R.* 73; *Tidd* 406.

4. The money lent by the trustees to De Lanney, for which the mortgages were given, cannot be taken and considered as his interest in right of his wife, for it is not within range of human knowledge or wisdom, to ascertain what is or will be De Lanney's interest in right of his wife, under the codicil to the will of Thomas Napier deceased; for the interest he may *seem* to have, is liable to be affected by the *possible* birth of children hereafter, by way of shifting use. *Doug. R.* 727; *Holt R.* 731; *Cornish on Uses,* 103; *Wilson on Springing Uses,* 1, 2, 3, *et passim.*

5. Thomas T. Napier being still in life, from whose body future issue may spring who may yet take under the provisions of the codicil—the property therein contained being given to "*Thomas T. Napier and his wife and his children,* (naming them,) *or any child or children of my son Thomas T. that may hereafter be born*"—consequently the interest of De Lanney in right of his wife, must remain uncertain till the death of Thomas T. Napier; for so long as he lives, the possibility of issue is not extinct, even if he was "*a hundred years old.*" 2 *B. Black. Com.* 125.

*By the Court.*—WARNER, J., delivering the opinion.

This is a bill filed by a judgment creditor, to subject the property to which the wife of the defendant in the judgment, is entitled under the will of her grandfather, in the hands of the trustees appointed by the testator. The main question presented by the argument, and which we are called on to decide, is the proper

construction to be given to the codicil to the will of Thomas Napier, the deceased testator.

The bequest in the codicil is in the following words : " I do [1.] hereby give, bequeath and devise said property and estate, (meaning the property mentioned in the body of the will,) and all and every part thereof, whether real or personal, to my sons Leroy Napier and Skelton Napier, and my son-in-law Nathan C. Munroe, as trustees and in trust for my said son Thomas T. Napier, his wife, and his children Leroy Wiley Napier, Sarah C. Napier, Manfredonia M. Napier, and Thomas C. Napier, and any child or children of my said son Thomas T. Napier that may *hereafter be born* ; the said trustees to be vested with the legal estate and full control of said property, and receive the rents, issues and profits thereof, and to apply the same to the use of, and for the support and maintenance of my said son Thomas T. and his family, and to the support, education and *settlement* of the aforementioned children of my said son Thomas T. Napier, it being my will and desire that all the property that would have fallen to my said son Thomas T. under the aforementioned, revoked bequests and provisions of said last will, should under this codicil, vest in said trustees, in trust and for the use aforesaid forever."

It appears from the record, that Sarah C. Napier intermarried with James L. De Lanney, who borrowed of the trustees aforesaid the sum of $4000, which sum was secured by two mortgages on personal property—the mortgages being of different dates, and each given to secure the loan of two thousand dollars.

It also appears that John H. Howard became the assignee of two judgments, obtained against De Lanney in 1842, on one of which there was due about $2,400, and on the other about $2,478.

Howard filed his bill to set aside the two mortgages, as fraudulent against creditors, and prays that the trustees under the will of Thomas Napier may be decreed to distribute to said De Lanney his share of the property or money in right of his wife, under said codicil, or a sufficient part thereof to satisfy the judgments, or that said trustees may pay directly said judgments, and have the same allowed them as so much distribution to said De Lanney; and that the mortgage *fi. fas.* be enjoined from proceeding to sell the mortgaged property, &c. The injunction was granted, and on a motion to dissolve the same on the coming in of the answers of the defendants, the Court below decided that the injunction should be dissolved, so as to permit the trustees to proceed with the oldest

mortgage *fi. fa.*, but held up the injunction as to the youngest mortgage *fi. fa.* Whereupon both parties excepted to the decision, and now assign the same for error here.

For the purpose of dissolving the injunction, the question of *fraud* is put to rest by the answers of the defendants. The charge of fraud in obtaining the two mortgages, is fully met and *explicitly denied.*

What then are the rights and equities of the respective parties growing out of this case, as presented by the record?

The judgment creditor seeks to appropriate the share of the property which the debtor De Lanney is entitled to receive from the trustees in right of his wife, in satisfaction of his judgments; or so much thereof as shall be sufficient for that purpose.

For the creditor it is contended, that by the terms of the codicil it was the intention of the testator, that the share of each child of Thomas T. Napier should be paid, to the females when they married, and to the sons when they became of age; that it was intended for their support, education and *settlement.*

On the part of the trustees it is contended, that the property was to be kept together during the life of Thomas T. Napier, and then to be divided among his children, for the reason that the bequest included children who might hereafter be born, as well as those already born; and the probability of issue was not extinct as long as Thomas T. Napier remained in life.

The counsel for the creditor, however, took the position, and insisted, that the bequest was confined alone to the children of Thomas T. Napier who were in life at the time of the death of the testator, and that *after-born* children could not take under the bequest. Such a construction, in our judgment, would violate the manifest *intention* of the testator. The bequest is made to the trustees, "in trust for my said son Thomas T. Napier, his wife, and his children Leroy Wiley Napier, Sarah C. Napier, Manfredonia M. Napier and Thomas C. Napier, *and any child or children of my said son Thomas T. Napier that may hereafter be born,*" and the trustees are directed to apply the property bequeathed " to the use of, and for the support and maintenance of my said son Thomas T. and *his family,*" that is to say, such *children* of his family as he might at any time have—not such as he might have at the death of the testator, or at any other fixed and *definite* period. The object of the testator was, to provide for his son Thomas T. and his wife, and the children which he had at the time of making the codicil, as well as those which he might at any time *thereafter* have; for he

vests the property in the trustees for that purpose, without limitation, "*forever.*" Speaking of devises of real estates, Chancellor Kent states the rule to be, " where there is a devise to A for life, remainder to his children, the children living at the death of the testator take vested remainders, subject to be disturbed by *after-born children.* The remainder vests in the persons first becoming capable, and the estate opens and becomes divested in quantity by the birth of subsequent children, who are let in to take vested proportions of the estate." 4 *Kent Com.* 205, 2d ed. In *Doe* vs. *Provoost*, 4 *Johns. R.* 61, the words of the will were, " I devise to my daughter, Christiana Provoost, the dwelling-house and grounds she now lives on, to hold the said house and grounds for and during the term of her life ; and immediately after her death I give the same unto and among all and every such child and children as the said Christiana shall have lawfully begotten at the time of her death, in fee simple, share and share alike."

The construction given to this will by the court was, " that upon the decease of the devisor, Christiana took an estate for life, and her four children then living took a vested remainder in fee; and in case there had been any *after-born* child or children of Christiana, the remainder would have opened for their benefit, so that the property, in the language of the will, might be equally divided between them, share and share alike." In the construction of wills, the *intention* of the testator must prevail, when such intention does not violate any fixed rule of law. What was the intention of Thomas Napier the testator, in making the codicil to his will, to be gathered from the terms of it ? Our conclusion is, that he intended to make provision for his son Thomas T. and his wife, and also to make provision for the four children then in life, and such other child or children as he might afterwards have born. The children were to be educated, supported and *settled*, out of the property bequeathed. The whole family were to be supported out of the property, including his son and his wife, and the children educated, and when the proper time arrived for the children to be settled, then he or she was to receive his or her share of the property from the trustees, to make such settlement.

We are to understand the term " *settlement* " in its common and ordinary acceptation. What did the testator mean by the term *settlement* as applicable to the children of his son? Did he mean that all the property, except what was necessary for the support of his son, and his wife and children, and the education of

the children, should remain in the hands of the trustees during the life of his son, and then to be equally divided between his children? If so, why did he add, after making provision for the support and education of the children, the provision for their *settlement?* And when, according to the usage and custom of the country, are settlements made on children, of their property? Usually, when the females marry, and the males arrive at the age of twenty-one years. Then, according to the intention of the testator, they would have been supported and educated, and entitled to receive from the trustees their share of the property to settle themselves in business; and such is the direction, in our judgment, given by the testator in his codicil, to the trustees.

[2.] When Sarah C. Napier married De Lanney, she was entitled to receive from the trustees her share of the property in their hands for her settlement, and her husband was entitled to receive the same from them in her right. His creditors have the same right to the fund which he had, to be applied in the payment of his debts; they claim through him, and the same equities attach to the property in favour of the wife, which would have attached had the husband himself invoked the assistance of a court of equity to decree to him his wife's share of the property, in the hands of the trustees. According to the rule established by this Court in *Bell* vs. *Bell*, 1 *Kelly R.* 641, De Lanney, the husband of Sarah C. Napier, could not have obtained a decree of a court of equity against the trustees for his wife's share of the property in their hands, without making suitable provision for her and her children, if any. In that case we said: "In all cases where the husband comes into a court of chancery asking its aid to acquire the possession of his wife's property, whether it exists in the form of an equitable or legal chose in action, that court having acquired the power to act upon the subject matter, will use it, to do equity to both parties. As he seeks equity, it will hold him to do equity before it will grant it; and upon this principle he is in such cases required to make suitable provision for her and her children." 1 *Kelly R.* 641, *and authorities there cited.*

In that case we also held, " The assignees in bankruptcy or insolvency of the husband, also his assignees for the payment of his debts generally, and the special assignee or purchaser from him for a valuable consideration, are bound to make a settlement upon the wife, out of her choses in action or equitable interests assigned to them, in the same way, and to the same extent, and under the

Napier and others *vs.* Howard.

same circumstances, as the husband himself would be bound to make one ; for it is a general principle that they take the property subject to all the equities which exist between the husband and wife." 1 *Kelly* 642, 643, *and authorities there cited.*

The principles settled and declared in *Bell* vs. *Bell* we distinctly recognise as applicable to this case, and may be considered as the settled doctrine of this Court. Before the creditors of De Lan- [3.] ney can appropriate his wife's share of the property bequeathed to her by her grandfather Thomas Napier, now in the hands of the trustees, to the payment of his debts, suitable provision must be made out of it for her support and maintenance, as well as for the support, maintenance and education of her children, if any. Whether all, or what portion of her share of the property will be an *adequate* provision for that purpose, must depend on the circumstances and condition of the parties, as shall be made known to the Court and jury, by which we shall direct the inquiry to be made. In our judgment, however, the provision ought to be *liberal* in such cases, as the bequest of the testator was evidently intended for the benefit of his grand-daughter, and not for the creditors of her insolvent husband, whose debts were not contracted on the faith of his wife's property not yet reduced into his possession. If there should be children, and a fair prospect for more, their education should be provided for. In *Kinny* vs. *Udall*, 5 *Johns. Ch. R.* 480, the chancellor says, " The question in any case is, what is a suitable and adequate provision for the wife, under the circumstances ?" The Court has a discretion in such cases, whether it will give the whole or a part of the property to the wife. In the same case on appeal, (3 *Cowen R.* 606,) the court say : " As to the amount of the wife's estate which shall be secured to her, that is a proper subject of reference to a Master, and must necessarily be determined by the circumstances of each particular case. The rule is, that an *adequate* provision be made for the wife and 'the children, if any. What shall be considered *adequate*, must depend entirely on circumstances. In some cases the whole has been allowed the wife."

When suitable provision shall have been made for the wife and children in this case, if any, out of the wife's share of the property in the hands of the trustees, the balance, if any, the creditors of the husband will be entitled to have appropriated to the payment of their debts, according to the priority of their respective demands. We shall therefore send this case back, with instructions, to the

Court below, in conformity to the views expressed in the foregoing opinion. Let the following judgment, therefore, be entered.

This cause came on to be heard, on the transcript of the record from the Superior Court of the County of Stewart, and was argued by counsel. Whereupon it is considered and adjudged by the Court, that the judgment of the Court below dissolving the injunction, be reversed, and the injunction be retained until the further order of the Court below, to be made in conformity to the opinion of this Court herein expressed.

It is the opinion of this Court, that Thomas T. Napier and his wife, are entitled to the use and benefit of two shares of the trust property, in the hands of the trustees appointed by the testator in his codicil; and that his children now born, and such as may be hereafter born, are entitled to equal shares of the balance of the property in the hands of said trustees as aforesaid, to be paid to or settled on them, as they shall respectively arrive at the age of twenty-one years, or when the females shall marry. It is therefore ordered and adjudged by the Court, that the Court below direct an inquiry to be had by a special jury, as to the amount of property in the hands of the trustees held under the bequest made by the aforesaid codicil of the testator, in trust for the persons therein named, including the amount of the two mortgages in the record mentioned; and then, that a further inquiry be directed to be had by a special jury, what would be a suitable provision to be made for the support and maintenance of Mrs. Sarah C. De Lanney and her children, if any, out of her share of said trust property, including the whole, or such portion thereof, as may be deemed equitable and just; and that the same be decreed to her for her maintenance and support, as well as for the maintenance, support and education of her children, if any; and after making such provision, that the balance remaining, if any, be appropriated *to the* payment of the debts of the husband of said Sarah C. De Lanney—the said trustees taking bond, with security, in double the amount of the sum paid to each child, conditioned to refund their respective proportions of each share in the event there should be any child or children of the said Thomas T. hereafter born, entitled to a share of said trust property; and that the creditors of said De Lanney give like bond, with security, in double the amount received by them, conditioned as aforesaid.